IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JUST TACOS, INC.; and RESOL HAWAII, LLC, | ) ) ) | CIVIL NO. 11-00663 JMS/KSC |
| Plaintiffs, | ) ) ) | ORDER DENYING DEFENDANTS MICHAEL ZEZULAK, JUST TACOS PEARL CITY, INC. AND |
| v. | ) ) | JUST TACOS HAWAII KAI, INC.'S MOTION TO DISMISS FOR |
| MICHAEL ZEZULAK; JUST TACOS PEARL CITY, INC.; and JUST TACOS HAWAII KAI, INC., | ) ) ) ) | LACK OF SUBJECT MATTER JURISDICTION |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS MICHAEL ZEZULAK, JUST TACOS PEARL CITY, INC., AND JUST TACOS HAWAII KAI, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## I. INTRODUCTION

This case arises from a 2008 franchise agreement ("Agreement")

between Defendants Michael Zezulak ("Zezulak"), Just Tacos Pearl City, Inc., and

Just Tacos Hawaii Kai, Inc. (collectively, "Defendants") and Plaintiffs Just Tacos,

Inc. and Resol Hawaii, LLC (collectively, "Plaintiffs").  In late 2011, Defendants

allegedly repudiated the Agreement and lost permission to use Plaintiffs' "Just

Tacos" trade name/marks, trade dress, menus, and trade secret recipes, and to

operate Just Tacos restaurants in Pearl City and Hawaii Kai.  Plaintiffs claim that,

despite repudiating the Agreement, Defendants have continued to use improperly

the "Just Tacos" trade name/mark.  Plaintiffs assert claims against Defendants

under the Lanham Act, 15 U.S.C. § 1125, and for various violations of Hawaii law.

Defendants filed a Motion to Dismiss, which argues that the court

lacks subject matter jurisdiction because Plaintiffs' claims under the Lanham Act

pertain solely to economic activity within the State of Hawaii.  Based on the

following, the court DENIES Defendants' Motion to Dismiss for lack of subject

matter jurisdiction.

## II.  <u>BACKGROUND</u>

### A.    Factual Background

According to the Complaint, the parties entered into the Agreement in

March 2008, which obligated Defendants to operate according to chain-wide

standards and procedures and pay fees to Plaintiffs.  Doc. No. 1, Compl. ¶ 38.  In

late 2011, Defendants repudiated the Agreement and lost permission to use

Plaintiffs' "Just Tacos" trade name/marks, trade dress, menus and trade secret

recipes, and to operate Just Tacos restaurants in Pearl City and Hawaii Kai.  *Id.*

¶ 55.  At that time, Defendants declared that the name of the stores would be

changed and that they would operate independently. *Id.* ¶¶ 55, 57.  Plaintiffs allege,

however, that Defendants have not made any changes and have continued to use

the "Just Tacos" trade name.  *Id.* ¶ 63.  As a result, Plaintiffs assert that

Defendants' misappropriation of the "Just Tacos" trade name caused and will

continue to cause damage to Plaintiffs' goodwill and business reputation. *Id*. ¶ 80.

**B.      Procedural Background**

On October 28, 2011, Plaintiffs filed their Complaint alleging, among other things, Unfair Competition by False Designation of Origin under the Lanham Act, 15 U.S.C. § 1125.  Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction on April 15, 2013.  Doc. No. 96.  Plaintiffs filed an Opposition on June 4, 2013, Doc. No. 114, and Defendants filed a Reply on June 24, 2013.  Doc. No. 155.  A hearing was held on July 8, 2013.

## III.  DISCUSSION

In their briefing, the parties framed the subject matter jurisdiction question as whether Plaintiffs' trademark was "used in interstate commerce."  *See* Doc. No. 96, Defs.' Mot. at 7; Doc. No. 114, Pls.' Opp'n at 2.  Both parties appear to assume that absent evidence supporting a use in interstate commerce, the court lacks subject matter jurisdiction.  Based on the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), the court finds that this approach is misguided.  The "uses in commerce" element, properly construed, is a merits-based determination and not a jurisdictional predicate to a § 1125 Lanham Act claim.

///

///

3

A.     **The Jurisdiction/Substantive Merits Dichotomy**

In order to understand the distinction between jurisdictional limitations and substantive merits, it is necessary to delineate between two sources of Congress' authority: (1) the authority to create and define the elements of a claim for relief pursuant to the Commerce Clause; and (2) the authority to demarcate the federal courts' subject matter jurisdiction pursuant to Article III of the Constitution.  U.S. Const. art. I, § 8, cl. 3; *see Animal Science Prods. v. China Minmetals*, 654 F.3d 462, 467 (3d Cir. 2011); *Harmston v. City & Cnty. of S.F.*, 627 F.3d 1273, 1280 (9th Cir. 2010); *Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider.").  The question before the court is whether § 1125's "uses in commerce" provision is a limitation on the court's jurisdiction or an element of a claim for relief.  To answer this question, the court relies on *Arbaugh*, which recently clarified the jurisdiction/substantive merits dichotomy that was subject to much confusion pre-*Arbaugh*.

*Arbaugh* noted that "[j]urisdiction . . . is a word of many, too many, meanings," 546 U.S. at 510 (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998)) (internal quotation marks omitted), and that courts (including the Supreme Court) have been employing a "less than meticulous use of

4

the term." *Id*. at 511.  In an effort to curb these "drive-by jurisdictional rulings,"

the Court created a "readily administrable bright line" between a jurisdictional

prerequisite and an element of a plaintiff's claim for relief -- unless Congress has

"clearly state[d]" that a statutory limitation is jurisdictional, "courts should treat the

restriction as nonjurisdictional in character." *Id*. at 515-16.  A court examining a

statute need not find "magic words" that indicate Congress' "clearly stated" intent.

*Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013).  Rather, an

analysis of a statute should focus on "text, context and relevant historical

treatment" to discern a statutory provision's "legal character."  *Reed Elsevier, Inc.*

*v. Muchnick*, 559 U.S. 154, 166 (2010) (quoting *Zipes v. Trans World Airlines,*

*Inc.*, 455 U.S. 385, 393-95 (1982)).

Since *Arbaugh*, the Ninth Circuit has employed the Supreme Court's

analysis in determining the scope of federal court subject matter on various

occasions.  *See United States v. Trujillo*, 713 F.3d 1003, 1006-07 (9th Cir. 2013);

*Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 977-78 (9th Cir.

2012); *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 866 (9th Cir. 2011) (en banc);

*Pakootas v. Teck Cominco Metals, Ltd.*, 646 F.3d 1214, 1220 (9th Cir. 2011)

("Were we to wiggle around the words '[n]o Federal court shall have jurisdiction'

because of the timing language, we would be doing just the sort of 'wrestl[ing]'

*Arbaugh* rejects in favor of a bright-line test.").  And the Ninth Circuit has considered three primary factors -- derived from *Arbaugh* and its progeny -- to determine whether a provision is jurisdictional or an element of a claim: whether (1) the provision is clearly labeled jurisdictional; (2) the provision is located in a jurisdiction-granting provision; and (3) other reasons necessitate that the provision be construed as jurisdictional.  *Leeson*, 671 F.3d at 976-77 (citing *Payne*, 653 F.3d at 870-71) (collectively, the "*Arbaugh* factors").

After examining 15 U.S.C § 1125 and other relevant provisions with this framework in mind, the court concludes that the Lanham Act's "legal character" makes clear that the "uses in commerce" requirement is not a jurisdictional predicate.

## B.    The Lanham Act's "Uses In Commerce" Limitation is Nonjurisdictional

15 U.S.C. § 1125, entitled "False designation of origin, false descriptions, and dilution forbidden," provides, in relevant part, that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

6

> such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or
> commercial activities by another person . . . shall be
> liable in a civil action by any person who believes that he
> or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (emphasis added).  A separate section, 15 U.S.C. § 1127,

entitled "Constructions and definitions; intent of chapter" provides: "The word

commerce means all commerce which may lawfully be regulated by Congress."

And the Lanham Act contains a specific jurisdictional provision, 15 U.S.C. § 1121,

stating that "[t]he district and territorial courts of the United States shall have

original jurisdiction . . . of all actions arising under this chapter, without regard to

the amount in controversy or to diversity or lack of diversity of the citizenship of

the parties."[1]

      With this background, the court turns to the *Arbaugh* factors.

      The first *Arbaugh* factor asks whether a provision can be "clearly

labeled jurisdictional" through an examination of its text and context.  *Leeson*, 671

F.3d at 976 (quoting *Payne*, 653 F.3d at 870).  Here, neither § 1125 nor § 1127

"speak in jurisdictional terms or refer in any way to the jurisdiction of the district

courts."  *Arbaugh*, 546 U.S. at 515 (citing *Zipes*, 455 U.S. at 394 (1982)).  If

Congress had wanted the "uses in commerce" language to be treated as

---

[1] Of course, federal courts have broad authority over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

jurisdictional, "it could have cast that provision in language like that in the provision of [the Lanham Act] that governs [Federal district court jurisdiction]." *Henderson ex rel. Henderson v. Shinseki*, ---U.S.---, 131 S. Ct. 1197, 1204-05 (2011).  The "uses in commerce" requirement, contained in the statute setting forth the claim's elements, more appropriately describes a substantive, non-jurisdictional element of a claim under the Act.  *See Morrison v. Nat'l Australian Bank Ltd.*, ---U.S.---, 130 S. Ct. 2869, 2877 (2010) ("But to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question.").  The "uses in commerce" provision is not clearly labeled jurisdictional.

The second *Arbaugh* factor the court considers is whether the limitation appears "in a jurisdiction-granting provision."  *Leeson*, 671 F.3d at 977 (quoting *Payne*, 653 F.3d at 870-71).  Here, the "uses in commerce" requirement does not appear anywhere in 15 U.S.C. § 1121, the Lanham Act's jurisdiction-granting provision.[2]  *See Reed Elsevier*, 559 U.S. at 164 (finding that a statutory limitation found in a provision separate from those granting federal courts subject-matter jurisdiction suggests non-jurisdictional intent).  Nothing in 28 U.S.C. § 1331 or 15 U.S.C. § 1121 "condition[s] its jurisdictional grant" on whether a plaintiff can prove an effect on interstate commerce.  *Id.* at 165.  Nor does § 1121

---

[2]  The Lanham Act's Injunctive Relief jurisdictional provision, 15 U.S.C. § 1116(a), like § 1121, does not contain any "uses in commerce" requirement.

"specif[y] any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor" that would suggest any additional limitations on jurisdiction. *Arbaugh*, 546 U.S. at 515. Rather, the limitation's placement outside of § 1121 (and more importantly its inclusion in § 1125(a)) suggests that Congress regarded the requirement as an element of a claim for relief, not a jurisdictional limitation. *See Shinseki*, 131 S. Ct. at 1205.

The last *Arbaugh* factor the court considers is whether "other reasons necessitate[] that the provision be construed as jurisdictional." *Leeson*, 671 F.3d at 977 (quoting *Payne*, 653 F.3d at 870). The court cannot discern "any other factor suggest[ing]" that § 1125's "uses in commerce" requirement can be interpreted as jurisdictional. *See Reed Elsevier*, 559 U.S. at 165. Given the context and language of §§ 1121, 1125, and 1127, the court is "reluctant to infer such a restriction where Congress has not made it explicit." *Payne*, 653 F.3d at 870. Although § 1127's definition of "commerce" may be a more ambiguous limitation than *Arbaugh*'s Title VII numerosity requirement or *Reed Elsevier*'s 17 U.S.C. § 411(a) registration requirement, there is no evidence of a clear intention for this language to create a jurisdictional prerequisite. That is, even if the court found that the "uses in commerce" requirement is ambiguous, it still falls short of the "clearly states" threshold. *Arbaugh*, 546 U.S. at 515. Finding no "clearly state[d]" Congressional

intent, the court finds that the "uses in commerce" requirement is an element of a claim for relief, and not a jurisdictional predicate.

In reaching this conclusion, the court fully understands that the Ninth Circuit previously held that "uses in commerce" should be treated as a jurisdictional prerequisite. *Bosley Med. Inst. v. Kramer*,  403 F.3d 672, 677 (9th Cir. 2005) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952)).  The court believes, however, that *Bosley* is "clearly irreconcilable" with "intervening higher authority." *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

*Bosley* held in its one-sentence rationale: "[u]se in commerce is simply a jurisdictional predicate to any law passed by Congress under the Commerce clause."  403 F.3d at 677.  In reaching this decision, the court obviously did not have the benefit of the Supreme Court's clarification on the proper scope of jurisdictional rulings as articulated in *Arbaugh* and *Reed Elsevier*. The court's conclusion -- absent the type of analysis now required by *Arbaugh* -- fits squarely into the Supreme Court's description of "drive-by jurisdictional rulings that should be accorded no precedential effect." *Arbaugh*, 546 U.S. at 511 (citations and quotation marks omitted).

Rather than blur *Arbaugh*'s "bright line" rule, the court finds that

departing from *Bosley* better comports with the Court's mandate against rulings that lack "close analysis" of the critical differences between jurisdictional and nonjurisdictional limitations on causes of action.  *Reed Elsevier*, 559 U.S. at 161; *see U.S. ex rel. Air Control Tech. v. Pre Con Indus., Inc.*, 2013 WL 3242673 at *1, *3 (9th Cir. June 28, 2013) (holding that *Arbaugh* overruled prior Ninth Circuit precedent that the Miller Act's statute of limitations was a jurisdictional requirement); *Leeson*, 671 F.3d at 978 (holding that *Arbaugh* overruled prior Ninth Circuit precedent that the Employee Retirement Income Security Act's "participant" status requirement was jurisdictional).

Thus, because Congress does not "clearly state" that "uses in commerce" is a jurisdictional limitation, the court finds that such a limitation is a substantive element of a Lanham Act claim.  And because Defendants' Motion is based on the incorrect premise that the "uses in commerce" requirement is jurisdictional, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

///

///

///

///

11

## IV.  <u>CONCLUSION</u>

Based on the above, the court DENIES Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 12, 2013.



```
 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge
```

*Just Tacos, Inc. v. Michael Zezulak et al.*, Civ. No. 11-00663 JMS/KSC, Order Denying Defendants Michael Zezulak, Just Tacos Pearl City, Inc., and Just Tacos Hawaii Kai, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction.